# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 4:17-CR-00175 |
| v. | (Judge Brann) |
| JOSE HERNANDEZ-VASQUEZ, | |
| Defendant. | |

## MEMORANDUM OPINION

### AUGUST 7, 2018

The Government moved to involuntary medicate Jose Hernandez-Vasquez in order to restore him to competency.[1] For the reasons that follow, that motion will be granted.

## I. BACKGROUND

On May 25, 2017, a grand jury indicted Mr. Hernandez-Vasquez for the murder of his cellmate at USP-Lewisburg.[2] He was detained pending trial,[3] and

---

[1] ECF No. 39. Although this motion was titled "Motion of the United States For a *Hearing* to Compel Involuntary Medication of Defendant" (emphasis added), the text of the motion indicates that the Government is seeking an order of involuntary medication as well as a hearing on its motion. *Id.* at 1 (indicating that the Government is "mov[ing] the Court *to order the involuntary medication* of Jose Hernandez-Vasquez to restore his competency . . . .") (emphasis added).

This was not the first time the Government has moved to involuntary medicate Mr. Hernandez-Vasquez in order to render him competent to stand trial. *See generally United States v. Hernandez-Vasquez*, 513 F.3d 908 (9th Cir. 2008).

[2] ECF No. 1.

the Government consequently moved for a hearing to determine whether he was competent to proceed.[4] Accompanying the Government's motion was a request for a psychological or psychiatric examination of Mr. Hernandez-Vasquez.[5]

On October 19, 2017, this Court held the requested hearing,[6] at which it considered an August 14, 2017 report of Dr. Lea Ann Preston Baecht, the forensic psychologist who examined Mr. Hernandez-Vasquez at the United States Medical Center for Federal Prisoners in Springfield, Missouri ("Springfield"). Relying in part on Dr. Baecht's opinion, this Court found that the defendant was "presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to assist properly in his defense," and committed him to the custody of the Attorney General for treatment.[7]

On February 23 2018, Dr. Baecht submitted another report to the Court, indicating that Mr. Hernandez-Vasquez "me[t] the diagnostic criteria for schizophrenia." While of the opinion that Mr. Hernandez-Vasquez "remain[ed] incompetent to proceed," Dr. Baecht's believed that there was a "substantial probability" that Mr. Hernandez-Vasquez's competency could be restored with

---

[3] ECF No. 10.

[4] ECF No. 15. The hearing was requested under 18 U.S.C. § 4241(a).

[5] The examination was requested pursuant to 18 U.S.C. §4241(b).

[6] The hearing was conducted pursuant to 18 U.S.C. 4247(d). *See id.* § 4241(c).

[7] ECF No. 31. *See* 18 U.S.C. § 4241(d)(1).

anti-psychotic medication." The Government subsequently moved to administer that medication involuntary.[8]

On April 26, 2018, this Court held a hearing on the Government's motion. Dr. Robert Sarrazin, Chief of Psychiatry at Springfield, presented a "Proposed Treatment Plan" for Mr. Hernandez-Vasquez, which identified four medications (and their respective doses) that Dr. Sarrazin believed were appropriate for Mr. Hernandez-Vasquez's use. That plan, and Dr. Sarrazin's accompanying testimony, also identified the methods by which those medications would be administered, and the monitoring that would completed while Mr. Hernandez-Vasquez was being treated. Dr. Baecht also spoke at the hearing, elaborating on the proposed plan and providing information on her own interactions with, and opinions about, Mr. Hernandez-Vasquez. Both doctors agreed that Mr. Hernandez-Vasquez was in fact suffering from schizophrenia.[9]

## II. DISCUSSION

### A. Whether the Government May Involuntarily Medicate Mr. Hernandez-Vasquez Solely to Render Him Competent to Stand Trial

In *Sell v. United States*, the United States Supreme Court held that "the Government [may] involuntarily . . . administer antipsychotic drugs to a mentally

---

[8] ECF No. 39.

[9] Transcript of April 26, 2018 Hearing (ECF No. 46) at 15, 55.

ill defendant facing criminal charges in order to render that defendant competent to stand trial."[10] The court noted, however, that "[t]here are often strong reasons for a court to determine whether forced administration of drugs can be justified on . . . alternative grounds before turning to the trial competence question."[11] Specifically, the court looked to its previous decision in *Washington v. Harper*,[12] where it held that involuntary medication is appropriate in certain circumstances when a defendant "is dangerous to himself or others."[13]

Counsel for Mr. Hernandez-Vasquez argues that Mr. Hernandez-Vasquez's treatment should proceed under *Harper*, not *Sell*. The Government notes, however, that while Mr. Hernandez-Vasquez has in fact been civilly committed, it was determined Mr. Hernandez-Vasquez was *not* a candidate for involuntary medication on dangerousness grounds.[14] Therefore, this Court will proceed under *Sell*.[15]

---

[10] 539 U.S. 166, 179 (2003).

[11] *Id.* at 182.

[12] 494 U.S. 210 (1990).

[13] *Id.* at 227.

[14] *See, e.g.*, Transcript of April 26, 2018 Hearing at 42 ("[T]he administrative hearing officer . . . did not think [Mr. Hernandez-Vasquez] currently met the criteria for involuntary medication under *Harper* because [the staff] w[as] able to effective manage his level of dangerousness in this correctional environment."). *See also* Ex. A (Report and Recommendation on Mr. Hernandez-Vasquez's civil commitment proceedings, which does not find order involuntary medication).

[15] *See United States v. Cruz*, 757 F.3d 372, 378 n. 3 (3d Cir. 2014).

### B. Whether Important Government Interests Are at Stake

The *Sell* court indicated that a court should consider four factors before ordering involuntary medication for trial competence purposes.

Under the first *Sell* factor, the Government must show that "important government interests are at stake."[16] To make this determination, a court "balance[s] the seriousness of the crimes at issue with case-specific special circumstances that may lessen the importance of that interest."[17] Such "special circumstances" may include "the possibility that the defendant has already been confined for a significant amount of time (for which he would receive credit toward any sentence ultimately imposed), and the likelihood, given the defendant's failure to take drugs voluntarily, that he will face lengthy confinement in an institution for the mentally ill that would diminish the risks that ordinarily attach to freeing without punishment one who has committed a serious crime."[18]

Mr. Hernandez-Vasquez has been accused of murdering another individual "willfully, deliberately, maliciously, and with premeditation and malice aforethought"[19]—*i.e.*, first-degree murder.[20] Correspondingly, if convicted, he

---

[16] *Cruz*, 757 F.3d at 381.

[17] *Id.*.

[18] *Id.* The defendant bears responsibility for "demonstrating that the special circumstances of his case undermine the Government's interest." *Id.* at 382 (citing *United States v. Mikulich*, 732 F.3d 692, 699 (6th Cir. 2013)).

[19] ECF No. 1.

"shall be punished by death or by imprisonment for life."[21] Even if Mr. Hernandez-Vasquez were convicted only of the lesser-included crime of second-degree murder, it appears that the United States Sentencing Guidelines would recommend a sentence of between 235 and 292 months.[22]

Counsel for Mr. Hernandez-Vasquez does not dispute that the defendant is being charged with a serious crime,[23] but does raise a few "special circumstances" arguments. First, he notes that Mr. Hernandez-Vasquez has already been detained for some time, for which he will receive credit if ultimately convicted and sentenced. Second, he argues that Mr. Hernandez-Vasquez's civil commitment eliminates any danger of releasing him into the public. Third, he argues that the alleged facts of this case point to reduced culpability on Mr. Hernandez-Vasquez's behalf.[24]

It is true that Mr. Hernandez-Vasquez has been detained for slightly over a year to face charges on the instant indictment, but in light of the extreme sentence

---

[20] 18 U.S.C. § 1111.

[21] *Id.* (emphasis added).

[22] This estimate was provided to the Court by the Government, in its brief. ECF No. 47 at 13. Counsel for Mr. Hernandez-Vasquez does not dispute this estimate.

[23] *Cf. Cruz*, 757 F.3d at 383 (noting that the defendant argued that his offenses were "not 'serious' offenses that might justify the Government's interest"); *United States v. Grape*, 549 F.3d 591 (3d Cir. 2008) (finding charged crimes "serious" where defendant was facing mandatory minimum of fifteen years).

[24] *See* Mr. Hernandez-Vasquez's Brief in Opposition, ECF No. 50 at 5 ("If the Bureau of Prisons had not put two schizophrenic people in one cell, this would not have occurred.").

he is facing, he "would still need to serve a majority of his sentence if convicted."[25] And while Mr. Hernandez-Vasquez has in fact already been detained civilly,[26] such "civil commitment is [no] substitute for a criminal trial."[27] Further, there is no evidence to suggest that such commitment will somehow equal the prison sentence Mr. Hernandez-Vasquez would receive if convicted.[28] Finally, arguments about the alleged circumstances of the offense, while perhaps properly made to a jury at trial or to the Court at sentencing, do not diminish the gravity of the charged conduct—*i.e.*, the purposeful killing of another human being.

Therefore, this Court finds that the first *Sell* factor has been satisfied.

### C. Whether Involuntary Medication Will Restore Mr. Hernandez-Vasquez's Competency

Under the second *Sell* factor, the Government must show that "involuntary medication will significantly further" its important interests—*i.e.*., that "administration of the drugs is substantially likely to render the defendant competent to stand trial.[29] Part of this analysis involves determining whether "administration of the drugs is substantially unlikely to have side effects that will

---

[25] *United States v. Grape*, 549 F.3d 591, 602 (3d Cir. 2008).

[26] See Government's Reply Brief (ECF No. 54), Exs. A and B.

[27] *Sell*, 539 U.S. at 180.

[28] *See Grape*, 549 F.3d at 603 ("It is no longer clear that Grape's punishment—incarceration, whether in prison or a medical facility—would be the same whether or not he were involuntary medicated.").

[29] *Sell*, 539 U.S. at 181.

interfere significantly with the defendant's ability to assist counsel in conducting a trial defense."[30]

Both Dr. Baecht and Dr. Sarrazin testified that the proposed course of treatment would restore Mr. Hernandez-Vasquez to competency, and that any side effects would be minimal and manageable.[31] Counsel for Mr. Hernandez-Vasquez does not dispute that medication would be effective, but instead argues that Mr. Hernandez-Vasquez "will be a different person at trial" as a result of the it.[32] This argument is presented in two parts. First, counsel argues that Mr. Hernandez-Vasquez may gain weight and consequently appear heavier and—the reasoning seems to go—stronger, which may allow the jury to draw an adverse inference against him. Second, he argues that restoring Mr. Hernandez-Vasquez to competency will diminish the effectiveness of any defense based on Mr. Hernandez-Vasquez's allegedly impaired mental state at the time of the offense.

---

[30] *Id.*

[31] Transcript of April 26, 2018 Hearing at 19 (Dr. Baecht: "I think it is substantially likely that he could be restored to competency with appropriate psychiatric treatment."); *id.* at 25 (Dr. Baecht: "If the side effects were so severe and could not be adequately addressed that they prevented him from staying awake during the court proceedings, for example, I wouldn't opine that he was competent to begin with."); *id.* at 44 ("Is it your opinion that Hernandez-Vasquez can be restored to competency with antipsychotic medication?" Dr. Sarrazin: "Yes."); *id.* at 86 ("I do not think that there would be significant side effects that would interfere [with the fairness of any trial].").

[32] Mr. Hernandez-Vasquez's Brief in Opposition at 6.

Part of this *Sell* factor's analysis includes a consideration of whether the medication would "render[] the trial unfair."[33] However, this Court is not convinced that these potential side effects would create such an injustice. While on medication, Mr. Hernandez-Vasquez will have his weight monitored.[34] And he will be free, at trial, to present relevant evidence about his mental state at the time of the alleged offense.

Therefore, this Court find that the second *Sell* factor has been satisfied.

**D.  Whether Involuntary Medication is Necessary**

Under the third *Sell* factor, the Government must show that "involuntary medication is necessary to further" its important interests—*i.e.*, that "any alternative, less intrusive treatments are unlikely to achieve substantially the same results."[35]

Both Dr. Baecht and Dr. Sarrazin testified that the symptoms of Mr. Hernandez-Vasquez's schizophrenia were highly unlikely to abate without drugs.[36] The doctors also indicated that forced medication is a last-result option for them, and that every attempt will be made to get Mr. Heranandez-Vasquez to cooperate

---

[33]  *Sell*, 539 U.S. at 181.

[34]  Transcript of April 26, 2018 Hearing at 58, 66.

[35]  *Sell*, 539 U.S. at 181.

[36]  Transcript of April 26, 2018 Hearing at 22 ("talk therapy is simply not going to affect th[e] biological reasons for [Mr. Hernandez-Vasquez's] symptoms"); *id.* ("His symptoms are not likely to remit spontaneously."); *id.* at 68 ("Individual psychotherapy, group psychotherapy, case management, et cetera, would not impact the underlying etiology of the brain illness that is schizophrenia.").

with treatment in the first instance.[37] Counsel for Mr. Hernandez-Vasquez does not point to any available alternative to medication, nor does he seek a less-drastic means of administration.

Therefore, this Court finds that the third *Sell* factor has been satisfied.

### E. Whether the Proposed Medication is Medically Appropriate

Under the fourth and final *Sell* factor, the Government must show that "administration of the [proposed] drugs is medically appropriate"—*i.e.*, "in the patient's best medical interest in light of his medical condition."

Both doctors indicated that antipsychotic medication is the "gold standard" for treating schizophrenia.[38] Counsel for Mr. Hernandez-Vasquez does not offer an alternative medical opinion, but does note that there is no "guarantee" of success with such medication, and that side effects are impossible to predict with accuracy. While this is undoubtedly true, the inquiry under this factor is not medical certainty, but rather medical appropriateness.

Therefore, this Court finds that the fourth *Sell* factor has been satisfied.

## III. CONCLUSION

Because all *Sell* factors weigh in favor of the Government, the Court will order the medication of Mr. Hernandez-Vasquez in accordance with Dr. Sarrazin's

---

[37] Transcript of April 26, 2018 Hearing at 26, 60; *see Sell*, 539 U.S. at 181 ("[T]he court must consider less intrusive means for administering the drugs, *e.g.*, a court order to the defendant backed by the contempt power, before considering more intrusive methods.").

[38] Transcript of April 26, 2018 Hearing at 44, 64.

Proposed Treatment Plan, as outlined by both doctors at the April 26, 2018 hearing.  As requested by Dr. Sarrazin in his plan, the Court will also authorize the staff at Springfield to involuntarily perform any physical and laboratory assessments and monitoring which are clinically indicated to monitor for medication side effects, if Mr. Hernandez-Vasquez refuses to consent to any of those procedures.  Finally, the Court will order the continued hospitalization of Mr. Hernandez-Vasquez, under 18 U.S.C. § 4241(d)(2) for a period of six months.[39]

An appropriate order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[39] In Dr. Baecht's February 23, 2018 Report, she indicated that Mr. Hernandez-Vasquez was previously restored to competency with some of the medications recommended here by Dr. Sarrazin.  On that basis, this Court finds that "there is a substantial probability that . . . [Mr. Hernandez-Vasquez] will attain the capacity to permit the proceedings to go forward" within six months of beginning restoration treatment anew, and that six months is a "reasonable period of time."  18 U.S.C. § 4241(d)(2)(A).